**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FREDRICK ERNEST GRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00616-PLC |
| | ) |
| U.S. CONGRESS OF UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Fredrick Ernest Graham for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 11). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $16.58. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B); and 28 U.S.C. § 1406(a).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Along with his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 11 at 3-4). The account statement shows an average monthly deposit of $82.88. The Court will therefore assess an initial partial filing fee of $16.58, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal

2

construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff is a self-represented litigant who is currently incarcerated at the United States Penitentiary in Thomson, Illinois. On June 6, 2022, he submitted a handwritten document titled "28 U.S.C. § 1346(a)(1)," naming the "U.S. Congress of United States" as defendant. (Docket No. 1). The document contained numerous odd statements, including plaintiff's opening request for "unemployment insurance on (all) unoccupied citizens so he can electronically monitor [their] names, birth dates, and S.S.N." Elsewhere, however, he appeared to allege excessive force by correctional officers, so the Court construed the document as an attempt to file a civil action pursuant to 42 U.S.C. § 1983.

Subsequently, plaintiff filed two supplements. The first appeared to be a press release concerning an investigation into alleged abuses at USP Thomson. (Docket No. 3). The second purported to seek "Sanctions of War Crimes," and accused the U.S. Congress of failing "to fund

3

the Kevlar bullet-proof book bags for children and Kevlar head gear for children, etc." (Docket No. 4).

On August 10, 2022, the Court ordered plaintiff to file an amended complaint on a Court form, as required. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). (Docket No. 9). He was also directed to either file a motion for leave to proceed in forma pauperis or pay the entire filing fee. The Court gave plaintiff thirty days in which to comply.

On August 22, 2022, plaintiff filed a "Declaration" with the Court, in which he alleged that he had been injured after his cellmate "pulled [him] from the top bunk," that he had lost all of his property, and that he had "almost [been] killed for no reason by prison guards." (Docket No. 6). He sought a "T.R.O.," along with "criminal charges on any chain of command and staff who processed cell assignments."

On August 26, 2022, plaintiff submitted a document titled "Notice," in which he sought "the removal of the minority status of (all) Middle-Eastern African and American colored races that are endangered by violence." (Docket No. 7). He also requested a six-month continuance because he was being extorted.

That same day, the Court received a document titled "Motion for Extension of Time." (Docket No. 8). Much of the filing was devoted to seeking "contempt of court sanctions against U.S. Congressional staff" due to purported "acts of terroristic activity." Based on the heading of the motion, the Court construed it as a motion for an extension of time to file his previously-ordered amended complaint, and gave him an additional twenty-one days. (Docket No. 9).

On September 15, 2022, the Court received plaintiff's amended complaint and a motion for leave to proceed in forma pauperis. (Docket No. 10; Docket No. 11). The Court will treat the

4

amended complaint as the operative pleading. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

### The Amended Complaint

Plaintiff's amended complaint is on a Court-provided 42 U.S.C. § 1983 form. He purports to bring the case as a "class action lawsuit" on behalf of himself, "Middle Eastern Africans," and "United States Citizens." (Docket No. 10 at 1). Plaintiff names as defendants the "U.S. Congress of the United States," the Department of the Treasury, the Library of Congress, the U.S. Copyright Office, and the Solicitor General's Office. The "Statement of Claim" consists of baffling allegations that the Court has had difficulty understanding. For instance, in the first paragraph, plaintiff states:

> All (portfolios) in U.S. Copyright Office and Corona Life (books) are bill (formats) and are registered in Fredrick Graham and President Joseph R. Biden[']s (names) under the National Security Clearance (bills) sent to Solicitor General and Library of Congress and caused the vice/president also former presidents to be contaminated with (COVID)[.] [This] also caused (24) students and teachers and also others to be killed during incident his agencies['] (3) minute response could have prevented if drones were manned by every documented citizen and recording cameras or food/vitamins plans which is set out under American Rescue Plan (stimulus). Graham has had his entire (stimulus check) deducted by (B.O.P.) staff which is money laundering checks in his name to start a (RICO) by way [of] the (F.B.O.P.) acting as a collections agency and deducting stimulus credits.

(Docket No. 10 at 3). Plaintiff goes on to assert that citizens of color have been endangered as the result of "terroristic mass killings during the registration of [plaintiff's] (patent)." (Docket No. 10 at 4). He claims this "patent" has been in the U.S. Copyright Office and the Library of Congress, and that he is "seeking funding of his (10) Corona Life (books)[,] which are manuscripts/portfolios" proposing the establishment of "a militia of (100,000) civilians

5

internationally to protect the lives of citizens during migrations." As best the Court can tell, plaintiff wants somebody to manufacture his "mask and drones" with oxygen tanks for COVID-19. Plaintiff also appears to be requesting that new bulletproof Kevlar vests, equipped with shoulder mounted cameras, be supplied to people due to shootings in "grocery stores…and in public schools."

In addition, plaintiff notes that the United States has funded "over one trillion dollars of citizens['] monies into a[n] invasion in Ukraine against Russian (soil) that endangers the lives of our civilians in the United States." He claims that Congress has endangered the lives of President Biden and U.S. citizens during this invasion. (Docket No. 10 at 5). Plaintiff believes that the "deployment of drones and weaponry funding has created a guaranteed nuclear war(s) and war crime for forcing President Biden to fund Ukraine by U.S. Congress and not" funding plaintiff's patents first. Likewise, he demands that his "infrastructure" – including drones for citizens, bulletproof bookbags, and Kevlar headgear – should be funded first, rather than the invasion. (Docket No. 10 at 6). Plaintiff further calls for an evacuation plan "to cover the United States" and allow its citizens "to be able to enter other nations" in the event of "ground wars in U.S. or nuclear strikes." (Docket No. 10 at 6, 8).

Beyond the funding of his patents and infrastructure, plaintiff "demands monthly checks for (all) citizens of minority status" until they can undertake a "Great Migration." (Docket No. 10 at 7). He concludes the "Statement of Claim" by insisting that he gave his "portfolio" – containing his "plans" – to the Library of Congress and the Solicitor General "a full year before the migration of Ukraine civilians." The failure to fund his plans "force[d] citizens to die."

In the "Injuries" section of the form complaint, plaintiff states that "Middle-Eastern Africans and other minorities have been murdered in schools, grocery stores, [and] places of

prayer…by local law enforcement agencies and by white [supremacist] individuals." (Docket No. 10 at 4). Specifically, he points out that ten civilians were killed in a hate crime that occurred in Buffalo, New York. As such, plaintiff requests the manufacture "of camera recorded bullet proof Kevlar" vests and "Kevlar face warmers and book bags for school children," the "full restoration of civil rights to (all) black citizens," and $1 trillion "worth of infrastructure plans." (Docket No. 10 at 8).

Along with his amended complaint, plaintiff filed a document titled "Process Service on the Solicitor General." (Docket No. 12). In the filing, he complains that he "has been subjected to unnecessary use of force and placed in a restraint cell," that he has been "placed…inside chains for (6) days," and that money has been wrongfully deducted from his account.

**Discussion**

Plaintiff is a self-represented litigant who has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against various agencies of the federal government. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court has determined that it lacks subject matter jurisdiction over plaintiff's claims. Furthermore, even if jurisdiction was present, the case is subject to dismissal for failure to state a claim and frivolity.

## A. Lack of Subject Matter Jurisdiction

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are

7

courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases").

Because jurisdiction is a threshold requirement, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009). *See also City of Kansas City, Mo. v. Yarco Co., Inc.*, 625 F.3d 1038, 1040 (8th Cir. 2010) ("Federal courts have an independent duty to determine subject matter jurisdiction, even where the matter is raised for the first time on appeal and on the court's own motion"). The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

i.      **Lack of Subject Matter Jurisdiction Due to Sovereign Immunity**

Here, plaintiff has sued various agencies and branches of the federal government, including Congress, the Department of the Treasury, the Library of Congress, the U.S. Copyright Office, and the Solicitor General's Office. "Generally, sovereign immunity prevents the United States from being sued without its consent." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020). *See also Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 671 (8th Cir. 2008) (stating that "[i]t is well settled that the United States may not be sued without its consent"). "Sovereign immunity is jurisdictional in nature," and "shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

8

In order to sue the United States, a plaintiff must show a waiver of sovereign immunity. *See V S Ltd. Partnership*, 235 F.3d at 1112. *See also Great Rivers Habitat Alliance v. Federal Emergency Management Agency*, 615 F.3d 985, 988 (8th Cir. 2010) (explaining that the United States and its agencies enjoy "immunity from suit, absent a waiver"). Such a waiver must be "unequivocally expressed" and "cannot be implied." *See United States v. King*, 395 U.S. 1, 4 (1969). *See also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (stating that "in the context of federal sovereign immunity…it is well established that waivers are not implied").

Plaintiff has not asserted a waiver of sovereign immunity by the United States, and none is apparent on the face of the amended complaint. Though he has filed this action on a 42 U.S.C. § 1983 form, § 1983 does not apply to claims against the federal government. *See Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (explaining that under § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of *state* law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right") (emphasis added). Meanwhile, under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 389 (1971), plaintiff can bring an action "almost identical" to § 1983 against federal officials. *See Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999). However, "[i]t is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998).

There are also no facts to support the proposition that plaintiff is attempting to bring a claim under the Federal Tort Claims Act. *See Newcombe v. United States*, 933 F.3d 915, 917 (8th Cir. 2019) (explaining that the FTCA "waives federal sovereign immunity for injuries caused by the negligent or wrongful act or omission of any employee of the Government while acting within the

9

scope of his office or employment, under circumstances where the United States, if a private person, would be liable"). Finally, plaintiff has not established that the federal government has waived its immunity under 28 U.S.C. § 1346(a)(2), which "waives sovereign immunity where a plaintiff seeks less than $10,000 in damages for a constitutional violation." *See Aspen Composers' Conference v. Library of Congress, Cataloging in Publication Division*, 2013 WL 3716641, at \*4 (D. Minn. 2013). In this case, plaintiff has not stated a constitutional violation, and seeks far more than $10,000.

For all these reasons, plaintiff has failed to demonstrate that defendants have waived their sovereign immunity. As there is no waiver, sovereign immunity is intact, and the Court lacks subject matter jurisdiction over his claims. Therefore, the case must be dismissed without prejudice. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

## ii.    Lack of Subject Matter Jurisdiction Due to an Absence of Standing

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1161 (8th Cir. 2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). Thus, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). *See also Auer v. Trans Union, LLC*, 902 F.3d 873, 876-77 (8th Cir. 2018) (stating that "if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction"); and *School of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022) (stating that a "party invoking federal jurisdiction must" demonstrate Article III standing).

The requirement of standing limits the category of litigants who are empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). To establish constitutional standing, a plaintiff must demonstrate three elements: (1) that he or she suffered an injury in fact, which is "an invasion of a legally protected interest which is (a) concrete and particularized…and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to speculative, that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction has the burden to establish standing." *Huizenga v. Independent School Dist. No. 11*, 44 F.4th 806, 809 (8th Cir. 2022).

In this case, plaintiff has not carried his burden of establishing that he has standing to sue. Specifically, he presents no allegations showing that he has suffered an injury in fact. Instead, the ostensible injuries that plaintiff indicates in the amended complaint have all occurred to other people, none of them identified by name, but broadly including "Middle-Eastern Africans and other minorities," victims of gun violence, and victims of the invasion in Ukraine. Plaintiff makes no attempt to describe any personal loss or injury he has suffered, much less forge a causal connection between such injury and the conduct of defendants. For these reasons, plaintiff has not proven that he has standing to sue. Because he has no standing, the Court lacks federal subject matter jurisdiction to hear his claims. Therefore, this action must be dismissed without prejudice.

**B. Failure to State a Claim and Frivolity**

Even if the Court had subject matter jurisdiction to entertain this action, it would be subject to dismissal on initial review for failure to state a claim and for frivolity pursuant to 28 U.S.C. § 1915.

11

### i.     Failure to State a Claim

As set forth above, to survive initial review, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. That is, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). "While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). Furthermore, a pleading is insufficient if it offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

Here, plaintiff has not demonstrated a plausible claim for relief. That is to say, he presents absolutely no facts establishing that any of the defendants committed misconduct or harmed him in any way. Rather than asserting a cause of action, or actually describing what defendants did or did not do, plaintiff's amended complaint is devoted to his proposals regarding bulletproof vests, drones, and evacuation plans. In short, even liberally construing the amended complaint, plaintiff has not asserted sufficient facts to state a claim.

### ii.    Frivolity

Beyond his failure to state a claim, plaintiff's claims are frivolous. Pursuant to 28 U.S.C. § 1915, a court may dismiss a complaint as frivolous if it lacks an arguable basis in law or fact. *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). When dealing with factual frivolity, courts are given "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319,

12

327 (1989). Such a dismissal encompasses allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id*.

In this case, the Court has determined that plaintiff's often bizarre allegations not only fail to state a claim, but are fantastic and delusional. As best the Court can tell, plaintiff sent a copyrighted "portfolio" containing his $1 trillion "infrastructure" plan to defendants, and believes that defendants' failure to follow this plan has led to an untold number of deaths from mass shootings, COVID-19, and invasion. He is therefore suing to seek implementation of his plan. These allegations have no arguable basis in law or fact, rise to the level of the wholly incredible, and are frivolous. For this reason as well, this action must be dismissed.

### C. *Bivens* Claims Not Brought in Proper Venue

When he filed his amended complaint, plaintiff also submitted a handwritten document titled "Process Service on the Solicitor General." This document broadly alleged excessive force, improper restraints, and the wrongful deduction of money from his account, claims that might be cognizable under *Bivens* had plaintiff attempted to name the proper defendants. Even if the Court were to consider this document as part of the amended complaint, though, plaintiff has not adequately alleged venue in this Court. Venue over civil actions properly resides only in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

13

28 U.S.C. § 1391(b). If venue is improper, the Court must either dismiss the action or, in the interest of justice, transfer the action to the proper district. 28 U.S.C. § 1406(a)

Here, as noted above, plaintiff's "Process Service on the Solicitor General" contains claims that – liberally construed – could potentially fall under *Bivens*. Nevertheless, venue is not proper in this Court. Rather, plaintiff's complained-of actions occurred at USP Thomson, which is located in the Northern District of Illinois.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In this case, the Court will dismiss these claims without prejudice for improper venue.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $16.58 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B); and 28 U.S.C. § 1406(a). A separate order of dismissal will be entered herewith.

14

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 20th day of _____September_____, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE